COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


JENNIFER ROTHGEB

                                                  MEMORANDUM OPINION[*]
v.       Record No. 1399-06-3                          PER CURIAM
                                                     JANUARY 23, 2007
HARRISONBURG ROCKINGHAM
 DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                           John J. McGrath, Jr., Judge

            (Danita S. Alt, on brief), for appellant.

            (Kim Van Horn Gutterman, Assistant County Attorney; Roland M.
            L. Santos, Guardian *ad litem* for the infant children, on brief), for
            appellee.


        On May 26, 2006, the trial court entered orders terminating the parental rights of Jennifer

Rothgeb to her three children, W., B., and E., pursuant to Code § 16.1-283(B) and Code

§ 16.1-283(C)(2).  On appeal, Rothgeb contends the trial court erred in (1) approving a foster

care plan authorizing the adoption of the children and terminating her parental rights pursuant to

Code § 16.1-283(B), and (2) ordering termination of her parental rights despite her compliance

with the requirements imposed upon her by the Harrisonburg Rockingham Department of Social

Services (DSS).  Upon reviewing the record and briefs of the parties, we conclude this appeal is

without merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule

5A:27.


--------------------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Rothgeb has three children by her marriage to William Rothgeb (the father).[1] At the time of the termination hearing in the trial court, W. was twelve years old, B. was nine, and E. was seven. All three children had been in foster care for thirty-eight of the fifty-eight months preceding the termination hearing.

When living in the home with Rothgeb and the father, the children were subjected to repeated instances of physical abuse by the father, who drank alcohol to excess regularly. Rothgeb, however, failed to protect the children or to remove them from the home. Rothgeb and the father frequently resorted to physical violence upon each other in the presence of the children. One neighbor testified that after fights between Rothgeb and the father, he had seen the father's nose broken and bloodied twice. Rothgeb and the father "fought a lot more after the kids came back" from stays in foster care.

In addition, the children were found to be inadequately supervised on numerous occasions. When she was two years old, E. was removed from the home and placed in foster care for about a month in August 2000 following several episodes of her wandering the streets

---

[1] The trial court also terminated the father's parental rights to W., B., and E. We affirmed the trial court's decision on December 28, 2006. See Rothgeb v. Harrisonburg Rockingham Department of Social Services, Record No. 1396-06-3.

unsupervised.[2]  There were numerous founded complaints of neglect where the children were discovered wandering or playing in the street and at risk of being struck by vehicles.  In May 2001 all the children were removed from the home following a complaint that W., then age seven, was wandering in the street.

In the summer of 2002, the children were returned to the home on a trial basis.  DSS provided the family with in-home services to help with various issues, including parenting and supervision.  However, Rothgeb continued to allow the children outside unsupervised while she slept inside the home.  Ultimately, due to concerns regarding the children's cleanliness and their potentially dangerous interactions with the family's pit bull dogs, the children were again returned to foster care in September 2002.

The children were returned to the legal custody of Rothgeb and the father in October 2003.  On October 14, 2003, the father, while drunk, grabbed Rothgeb around the neck and choked her.  He turned over furniture and destroyed property in the house.  Rothgeb struck the father in the face several times.  As a result, Rothgeb became covered in the father's blood.  The children were present and witnessed the incident.

In July 2004, Rothgeb and the father were arguing in front of the entire family outside the home.  The father tried to prevent Rothgeb from leaving in the car.  Rothgeb turned the steering wheel of the car and "gunned it" in reverse in the father's direction so he could not escape being struck by the vehicle.  In the process, the vehicle pulled the father to the ground and ran over his legs.  The children witnessed the incident from the front porch of the home.  On July 16, 2004, the children were removed from the home and remained in foster care until the termination hearing.

---

[2] In the final episode before the 2000 removal, E. was found in the road by a truck driver. E.'s diaper was filled with urine and feces to the extent that it leaked through the sleeper she was wearing.

Following the final removal of the children, Rothgeb informed DSS that she had enlisted in the National Guard and would be gone for eighteen weeks of training. Rothgeb expressed no concerns about the effect of her absence upon her children. During her absence, Rothgeb did not maintain contact with the children through letters or other means. Rothgeb had two visits with the children during her training period. At those visits, she threatened them and demanded physical affection from them. Rothgeb would grab and hold the children, and they would beg her not to hurt them. B. told DSS that during one of the visits Rothgeb had hit him with a bat. Rothgeb also made promises to the children that she never fulfilled, such as building a clubhouse for them and buying them a horse when she returned from training.

When Rothgeb returned from her training in February 2005, DSS advised her that she was required to complete, among other things, a psychological evaluation, anger management classes, and parenting classes, as well as demonstrate appropriate understanding of her children's needs and parenting skills. DSS told Rothgeb to contact the agency once she had completed her psychological evaluation and substance abuse evaluation.

All the children had special needs resulting from various diagnosed conditions. W. had been diagnosed with Pervasive Developmental Disorder with autistic features. He also had been diagnosed with Cognitive Disorder and Depressive Disorder. W. exhibited behavior that was very difficult to control, and he suffered from encopresis, enuresis, and speech impairments. W. had been placed in a therapeutic foster home, where he received the counseling, supervision, and structure he needed.

During the period of time B. was residing with Rothgeb, his school record was replete with instances of misbehavior, unacceptable language, disrespect for school personnel, and aggression toward other children. Rothgeb did not follow the school's requests that B. be provided with counseling. After his final removal from the home, B. was diagnosed with major

depression with behavioral issues. B. also suffered from encopresis and enuresis. In counseling, B. blamed his anger and aggressive behavior upon the violence he had witnessed in Rothgeb's home. B.'s management of his behavioral issues had improved through counseling while he was in foster care, and he was performing well in school. Nonetheless, his counselor opined that B.'s condition required him to remain in a stable and structured family situation with a great deal of consistency.

At the time of the termination hearing, E. continued to suffer from post traumatic stress syndrome, which her counselor believed to be a direct result of the violence E. had experienced and witnessed in her home. During counseling, E. expressed that she loved her parents, but feared them as well. E. had made progress while in foster care, was doing well in school, and had learned how to better control her behavior.

After Rothgeb completed the required psychological and substance abuse evaluations in 2005, she did not contact DSS for further referrals for counseling specifically related to the special needs of the children. During her supervised visits with the children, Rothgeb demonstrated inadequate parenting skills. She would tease and insult B. and W. about their personal hygiene. Rothgeb refused to recognize that her children had been diagnosed with special needs that would need to be addressed on a consistent basis. Rothgeb failed to keep DSS consistently advised of her place of residence or her emergency contact information. Rothgeb finally obtained a residence, however, she permitted the father to move in after he was released from incarceration for various alcohol-related offenses. The home Rothgeb had obtained smelled strongly of cat urine, and there were feeding and drinking bowls for cats on the kitchen counters. If reunited with the children, Rothgeb planned for the father to have caretaking responsibility for the children after they returned home from school and while she worked.

In July 2005, after having removed the children from the home and placed them in foster care three times, DSS finally reached the point where "we just felt we really needed permanency for these children, that [Rothgeb and the father] had chances in the past and things had not been remedied." As a result, DSS changed its foster care plan goal from return home to adoption and began termination proceedings.

Dr. Joann Grayson, a clinical psychologist, reported in July 2005 regarding her most recent evaluation of Rothgeb, whom Grayson had evaluated several years before. Grayson's testing demonstrated that Rothgeb's skills were "adequate for minimal parenting." However, Rothgeb was unable to describe the specific special needs of her children. Grayson opined that the children remain at a high risk of neglect if left in their mother's care.

The trial court concluded that the level of violence to which the children had been exposed was "catastrophic." Regarding the history of physical violence between Rothgeb and the father, the trial court observed that Rothgeb "gave as good as she got in this thing." Coupled with the fact that the children had been doing "quite well" in foster care for "over sixty-five percent of the last five years," the trial court found that clear and convincing evidence proved that termination, as recommended by the children's guardian *ad litem*, was appropriate. The trial court entered orders terminating Rothgeb's residual parental rights under Code § 16.1-283(B) and 16.1-283(C)(2).

II.

Rothgeb argues that DSS did not establish by clear and convincing evidence the factors required for termination under Code § 16.1-283(B)(1) and (2).[3] She further contends that, because

---

[3] As a part of her question presented, Rothgeb challenges the approval of the foster care plan with the goal of adoption rather than returning the children home. However, as we conclude that the termination petitions were proven by clear and convincing evidence, our analysis necessarily subsumes Rothgeb's challenge to the court's approval of DSS's goal of adoption because "a preponderance-of-the-evidence standard governs judicial modification of foster care

she completed the requirements imposed upon her by DSS, and because DSS failed to provide her with services to assist her understanding of her children's special needs and the skills needed to parent them appropriately, the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(C)(2).

Rothgeb's arguments fail to take into account that subsections (B) and (C) provide "'individual bases upon which a petitioner may seek to terminate residual parental rights.'" Toms, 46 Va. App. at 269, 616 S.E.2d at 771 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003)). Satisfactory proof under either subsection, standing alone, sustains a termination decision. See Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005). Thus, the only issue we must decide is whether sufficient facts support the trial court's decision to terminate Rothgeb's parental rights under subsection (B). In answering that question, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child[ren]'s best interests.'" Id. at 7, 614 S.E.2d at 659 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).

Under Code § 16.1-283(B), the parental rights of parents of neglected or abused children may be terminated if the court finds by clear and convincing evidence that termination is in the best interests of the children and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical,

---

plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3. Thus, this question need not be addressed further.

mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Rothgeb argues the condition that constituted the substantial threat to the children's life, health, and development was inadequate supervision and that this condition was remedied at the time the children were returned to the legal custody of their parents in October 2003. This argument ignores the evidence of the pervasive violence and abuse in the home that resulted in the final removal of the children from the home in July 2004. The evidence proved that the father subjected the children to repeated physical abuse. Rothgeb, however, failed to protect the children or remove them from the home. In addition, the children repeatedly witnessed physical confrontations between Rothgeb and the father, resulting in the father's nose being broken more than once. Most significant were the incidents in October 2003, in which Rothgeb struck the father in the nose three times and became covered in his blood, and July 2004, when Rothgeb intentionally ran over the father's legs with the car. The trial court characterized the violence in the home as "catastrophic," and observed that Rothgeb "gave as good as she got."

The detrimental effects of the domestic violence were far from "unclear," as Rothgeb suggests. B., with major depression, blames his anger and aggression upon the violence he witnessed and experienced in the home. E. suffers from post traumatic stress syndrome as a result of her experience in Rothgeb's home. Despite their special needs, all three children had made progress academically and emotionally after removal from Rothgeb's care and exposure to the continued domestic violence.

Rothgeb contends DSS had provided her with no services to equip her to meet her children's special needs. However, "[n]othing in Code § 16.1-283 or the larger statutory scheme requires that [rehabilitative] services be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268, 616 S.E.2d at 771. Subsection (B)(2) "does not

create specific time frames" within which rehabilitative services must be provided to a parent after the child enters foster care.  Id. at 269, 616 S.E.2d at 771.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'"  Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)).  However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  In determining what is in the best interests of a child, we have stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The evidence supports the trial court's conclusion that termination of Rothgeb's parental rights was in the best interests of the children.  Before the termination hearing, the children had spent thirty-eight of the preceding fifty-eight months in foster care.  While in foster care, the children were receiving the specialized care that their conditions require for them to succeed. Moreover, Rothgeb's reunification plan includes the active participation of the father, whose parental rights to the children also have been terminated.  It is clearly not in the children's best interests to return them to a potentially volatile household.  As we have observed, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be

expected to hold.'" <u>Winfield v. Urquhart</u>, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997)

(quoting <u>Linkous v. Kingery</u>, 10 Va. App. 45, 46, 390 S.E.2d 188, 184 (1990)).

III.

Because sufficient evidence supports the trial court's decision, we affirm the termination

of  Rothgeb's parental rights pursuant to Code § 16.1-283(B).

<u>Affirmed.</u>